Crosby v. Patch.

---

## CROSBY *et al. v.* PATCH.

THE sixth article of the Revenue Act of 1854, which declares "all goods, wares and merchandise, provisions, or any other property whatsoever, brought or received within this State from any other State, or from any foreign country, to be sold in this State, owned by any person or persons not domiciled in this State," to be consigned goods within its intent and meaning, and provides that all persons selling such goods shall be subject to a tax, for the use of the State, at the rate of fifty cents on each one hundred dollars of the amount of sales made by them, is not repealed by the Revenue Act of 1857.

The repeal of statutes by implication is not favored. And as there is no necessary repugnancy between the specific provisions of the sixth article of the Act of 1854, taxing consigned goods, and the general language of the Act of 1857,

Crosby *v.* Patch.

taxing all property within the State, with certain exceptions, and as the Legislature has not in direct terms repealed said sixth article, the two acts must be construed together and effect given, if possible, to both.

Where a subsequent statute repeals in direct terms certain sections of a former statute, upon the same general subject, it is equivalent to a declaration that the remaining sections shall be in force—there being no necessary repugnancy between such remaining sections and the subsequent statute.

Cases cited upon the rules applicable to the repeal of statutes by implication.

APPEAL from the Fourth District.

The facts are stated in the opinion of the Court. Defendant appeals.

*S. Heydenfeldt,* for Appellant, argued that the goods taxed in this case had entered into the general property of the State, and were therefore liable to taxation ; but as the Court does not pass on that question, the authorities cited are omitted.

*Hall McAllister,* for Respondents, upon the rule as to the repeal of statutes by implication, and to the point that the Revenue Act of 1857 does not repeal the sixth article of the Revenue Act of 1854, cited Revenue Acts of 1854 and 1857 ; Dwarris on Stat. 553 ; Scdgw. Stat. L. 123–128, and to the point that the said sixth article is constitutional, *People* v. *Coleman,* 4 Cal. 46.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is an action to recover the sum of five hundred and seventy-five dollars paid, under protest, by the plaintiffs to the defendant, who was at the time Tax Collector of the city and county of San Francisco, in order to release from seizure and threatened sale certain property belonging to them, seized by him for taxes of the fiscal year ending in 1858, levied on consigned goods in their hands. The case was tried without a jury and the Court found that the plaintiffs were at the time importing merchants ; that the goods upon which the tax was levied were in their possession as consignees, and were the property of persons who were neither residents nor citizens of California; that the goods were in the original form and package in which they were imported ; that they had

not been incorporated with the mass of property in the State, and had not lost their distinctive character as imports, and that the assessment was made and the tax levied under the Revenue Act of 1857. Upon these facts the Court held that the plaintiffs were entitled to recover, and gave judgment in their favor, and hence the present appeal.

The plaintiffs claim an affirmance of the judgment on two grounds: first, that the tax was assessed and collected under the Revenue Act of 1857, and not under that of 1854, the sixth article of which latter Act, it is insisted, was at the time in force; and second, that a tax on consigned goods, previous to their sale and incorporation with the mass of the property of the State, is repugnant to the Constitution of the United States. The conclusion to which we have arrived upon the first ground renders it unnecessary to pass upon the second.

The Revenue Act of 1854, in its sixth article, declares " all goods, wares and merchandise, provisions, or any other property whatsoever, brought or received within this State from any other State or from any foreign country, to be sold in this State, owned by any person or persons not domiciled in this State," to be consigned goods within its intent and meaning, and provides that all persons selling such goods shall be subject to a tax, for the use of the State, at the rate of fifty cents on each one hundred dollars of the amount of sales made by them. The act also requires a monthly statement under oath from them of the amount of their respective sales, and provides in case of their neglect or refusal to pay the duties imposed, that they shall forfeit double the amount thereof. These provisions were in force at the time the tax, which is the subject of consideration in the present case, was levied, unless repealed by the Revenue Act of 1857. This latter act declares all property within the State subject to taxation, with certain specified exceptions, among which consigned goods are not designated; and the definition which it gives of " personal property " in the fifth section is sufficiently comprehensive to include goods of that class. The Act of 1854 does not impose upon consigned goods the tax to which other personal property is subject; it only imposes, as we have stated, upon the sellers of such goods a percent-

Crosby v. Patch.

age tax on the amount of the sales made. The Act of 1857, if applicable to consigned goods, differs materially from that of 1854 ; if applicable, it authorizes State and County taxes upon such goods to the same extent and to be levied in the same manner as upon any other personal property within the State, without reference to the fact whether they have been the subject of sale or remain in their original condition of imports, and the property of nonresident consignors. If the sixth article of the Act of 1854 is repealed by the Act of 1857, it is so only by implication. There is no clause which, in direct terms, repeals that article. Other provisions of the same act, both preceding and following the article, are in direct terms repealed. The omission to refer to the article indicates the intention of the Legislature to leave the tax with reference to consigned goods as regulated by its provisions. From the specification of certain sections of the Act of 1854 as repealed, it is evident that the Legislature never contemplated the total repeal of that act, as one general repealing clause would, in that case, have been used, carrying the entire act. The specification of particular sections as repealed is equivalent to a declaration that the remaining sections shall continue in force. There is no necessary repugnancy between those remaining sections and the provisions of the Act of 1857. The two must be construed together, and effect given, if possible, to both. The Act of 1854, in the third section of the first article, uses language as to property subject to taxation sufficiently broad to include consigned goods, yet it was never held to authorize a tax directly upon such goods, for its general language is qualified by the specific provisions of the article relating to that class of goods. Those specific provisions remaining unrepealed, the general language of the Act of 1857 must in like manner be construed with reference to them, as much so as if they were embodied in that act. Both acts can thus be made to subsist together. Repeals by implication are not favored. Such is the universal doctrine of the authorities. "Whenever two acts," says the Supreme Court of Pennsylvania, "can be made to stand together, it is the duty of a Judge to give both of them full effect. Even where they are seemingly repugnant, they must, if possible, have such a construction that one may not be a

29

repeal of the other, unless the latter one contain negative words, or the intention to repeal is made manifest by some intelligible form of expression." (*Brown* v. *County Commissioners*, 21 Penn. 43.) "The invariable rule of construction," says the Supreme Court of New York, "in respect to the repealing of statutes by implication is, that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other; or unless in the latest act some express notice is taken of the former, plainly indicating an intention to abrogate it. As laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable." (*Bowen* v. *Lease*, 5 Hill, 226.) It is a rule, says Sedgwick, that a general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. "The reason and philosophy of the rule," says the author, "is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all. So where an Act of Parliament had authorized individuals to inclose and embank portions of the soil under the river Thames, and had declared that such land should be "free from all taxes and assessments whatsoever." The land tax act, subsequently passed, by general words embraced all the land in the kingdom; and the question came before the King's Bench, whether the land mentioned in the former act had been legally taxed, and it was held that the tax was illegal. Lord Kenyon said: "It cannot be contended that a subsequent Act of Parliament will not control the provisions of a prior statute, if it were *intended* to have that operation; but there are several cases in the books to show that where the intention of the Legislature was apparent that the subsequent act should not

have such an operation, then, even though the words of such statute, taken strictly and grammatically, would repeal the former act, the Courts of law, judging for the benefit of the subject, have held that they ought not to receive such a construction." (*Williams* v. *Pritchard*, 4 Dunf. & East.; 3 Sedgwick on Stat. and Const. Law, 123.)

These authorities are conclusive, and that construction must therefore be given to the general language of the Act of 1857, notwithstanding its comprehensive character, as will leave the provisions as to consigned goods of the sixth article of the Act of 1854 in full force. Those provisions are identical, except as to the amount of the percentage tax, with provisions in the Revenue Act of 1853, which were the subject of consideration by this Court in *People* v. *Coleman* (4 Cal. 46). In that case it was held that they were not in conflict with any clause of the Constitution of the United States, or of this State; and the correctness of that decision is not questioned by counsel.

Judgment affirmed.