CANODE v. SEWELL et al.   (No. 684.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1914.)

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.

Where there was evidence tending to show that an elevator which descended upon and killed an employé would suddenly start up or down without apparent cause, and that there had been no inspection of the elevator, there was sufficient evidence to take to the jury the question of the employer's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 179*)—INJURIES TO SERVANT — MASTER'S LIABILITY — STATUTES—REPEAL.

Rev. St. 1911, art. 4694, gave a right of action for the death of any person by the negligence of the owner of a common carrier, or for such death caused by the negligence of another person. Article 4695 provided that the wrongful act must be such as would, if death had not ensued, entitle the party to recover for injuries. Under these two articles an employer was held not to be liable for the death of an employé caused by the negligence of a fellow servant. Acts 33d Leg. c. 143 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694), re-enacted article 4694, amending it only so as to give a right of action for death resulting from the negligence of a corporation, its servants or agents, and repealed all laws in conflict therewith. Held, that the amending act did not repeal article 4695 so as to render an employer liable for death resulting from the negligence of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 354–358; Dec. Dig. § 179.*]

3. STATUTES (§ 158*)—IMPLIED REPEAL.

An implied repeal is not favored, and exists only where the conflict between the statutes is so clear that both cannot remain the law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. § 158.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Carrie Sewell and others against H. P. Canode. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

See, also, 170 S. W. 271.

Capps, Cantey, Hanger & Short and D. B. Trammell, all of Ft. Worth, Cooper & Merrill, of Houston, and Lumpkin & Harrington, of Amarillo, for appellant. Jones & Miller and L. C. Barrett, all of Amarillo, and J. L. Penry, of Dallas, for appellees.

HUFF, C. J. This was a suit originally brought by Carrie Sewell, wife of Alvin A.

Sewell, deceased, on behalf of herself and her minor daughter, Mary Irene Sewell, against H. P. Canode, for damages for the death of said Alvin A. Sewell, and upon announcement of ready for trial, Mrs. Mattie Norvell was made a party plaintiff, as one of the beneficiaries in the suit.

"The accident resulting in Sewell's death occurred July 11, 1913, and the allegations of negligence relied upon by appellees and submitted by the court were a failure to provide the said Sewell a reasonably safe place to work, and the negligence of one Frank Inman, likewise a servant of the defendant, who was in the elevator at the time Sewell was injured. Defendant specially denied appellee's allegations of negligence, and specially pleaded assumed risk, contributory negligence, that he was not guilty of any negligence causing the death of the decedent, and that the death of said Sewell was caused by the act of negligence of the fellow servant, for which defendant is not liable."

There was a verdict and judgment in favor of the appellees for the sum of $7,750, apportioned between the several beneficiaries as follows: Mrs. Sewell, $2,750; Mary Irene Sewell, $4,500; Mrs. Norvell, $500.

[1] The first assignment of error complains at the action of the court in refusing the appellant's specially requested charge No. 1, directing peremptorily the jury to return a verdict for defendant, for the reason that the uncontroverted testimony of the case fails to show any act of negligence on the part of the defendant, H. P. Canode, which was the proximate cause of the death of said Alvin A. Sewell. Without setting out the testimony with reference to the negligence charged against appellant in failing to furnish a reasonably safe place to work and maintaining it as such, we will state that there is some testimony tending to show that the elevator was out of repair in the particulars alleged, that is, that it would suddenly start up or down without any apparent cause therefor, and the question as to whether or not the appellant used ordinary care of inspection is raised by testimony tending to show that such inspection was not made. We believe that we would not be warranted in holding as a matter of law that there was no testimony authorizing the jury to find that there was no negligence. At any rate, the court, upon that issue, properly submitted the case to the jury, and the assignment upon appellant's negligence will be overruled.

The second and third assignments will be overruled for the reasons above stated.

The fourth assignment of error also complains of the sixth paragraph of the court's charge to the jury, wherein the jury were instructed that if the appellant was negligent in failing to furnish the deceased a reasonably safe place to work and such negligence was the proximate cause of his death, they would find for the appellees:

"Or if you believe from the evidence that Frank Inman, while in the employ of defendant, was working in or about the elevator in question, and while the said Sewell was engaged in his work in and about said elevator, said Frank Inman, without notice to said Sewell, threw the starting lever and thereby caused the elevator car to suddenly start, and in so doing it caught and crushed the said Sewell to death, and you further believe from all the circumstances that the throwing of the lever and starting the elevator car by said Inman, if he did so start it, was negligence on his part, and that such negligence, if any, was the proximate cause of the death of said Alvin A. Sewell, and that said plaintiff was thereby damaged, and that such death was not caused by dangers ordinarily incident to the 'employment' in which said Sewell was engaged, as that term is defined in this charge, you will find for the plaintiff, unless you find for the defendant under other instructions herein given."

Under other instructions the court instructed the jury that the appellees could not recover if Sewell himself was guilty of negligence contributing to his injury, or if he had assumed the risk, giving the law of assumed risk.

The fifth assignment complains at the action of the court in refusing to give appellant's third specially requested charge, which is:

"You are instructed, at the request of the defendant, that Frank Inman was a fellow servant with the deceased Alvin A. Sewell, and if you find from the evidence that the injury of said Alvin A. Sewell was directly and proximately caused by the act of the said Frank Inman, you will find for the defendant."

The facts in this case establish the fact that Frank Inman and Alvin A. Sewell were fellow servants, in the employ of appellant, and working together at the time of the death of Sewell. The elevator upon which these parties were at work was one used in the Amarillo Hotel, of which the appellant Canode was proprietor and owner. It operated from the basement to the upper stories of the building, of which there were three. Inman states substantially that on the day of the accident Sewell called his attention to the fact that the enunciator on a bell on the elevator was not working properly, and that he and the deceased went to the elevator for the purpose of remedying that defect, and at the time of the accident the elevator was between the second and third floors or stories and, as he described it, about 18 inches or two feet below the third floor, and that he (Inman) got into the elevator, and it started down immediately, and that he did not know just how it struck Sewell. Sewell was found on top of the elevator after it had gone to the basement of the building, and Inman states that he does not know whether he moved the lever which regulates the movement of the elevator up and down. The lever is described as moving from left to right and moving it in one direction causes it to go up, and moving it back in the other direction it will go down, and when released that it automatically goes to what is called neutral and stops the elevator. The elevator is run by electricity; the method of its connection, construction, etc., will not be deemed, at this time, necessary to describe. Inman was unable to state whether he moved

the lever or not, and that he only knew that he had hold of the elevator lever by having been told by one Mr. Ong, who was selling cigars in the lobby of the hotel, who stated he saw him moving it backwards and forwards as the elevator descended. We find that there are facts and circumstances which would have authorized the jury to find that the cause of the elevator descending was the fact that Inman moved the elevator lever to a point required to cause the elevator to descend, and that there are facts which would have authorized the jury in finding that in doing so he was negligent, and that his negligence in that particular was the proximate cause of the death of. Sewell. We believe this will be a sufficient statement of the facts to understand our holding in this case.

[2] The controlling question in this appeal is the effect to be given to the second section of article 4694, R. C. S., as amended by the Thirty-Third Legislature (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694). This statute, together with article 4695, gives a right of action to the widow and beneficiaries of the decedent, which does not exist independent of these statutes. It has long been the rule in this state that actions founded upon these statutes, must strictly conform to them. Ry. Co. v. Le Gierse, 51 Tex. 189; Sullivan, etc., v. Cooper, 105 Tex. 21, 142 S. W. 1168. It is contended in this case that the amendment of article 4694, R. C. S., by the act of 1913 (General Laws, c. 143, p. 288) repeals article 4695. The amendment is as follows:

"An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency.

"Be it enacted by the Legislature of the state of Texas:

"Section 1: That article 4694 of the Revised Civil Statutes of 1911 be, and the same is hereby amended so as to hereafter read as follows:

"Article 4694: An action for actual damages on account of injuries, causing the death of any person, may be brought in the following cases:

"1st: When the death of any person is caused by the neglect or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stagecoach or other vehicle for the conveyance of goods, passengers, or by the unfitness, neglect or carelessness of their servants or agents; when the death of any person is caused by the neglect or carelessness of the receiver or receivers, or other person or persons in charge or control of any railroad, or their servants or agents; the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad was being operated by the railroad company.

"2nd. When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants.

"Sec. 2. That all laws in conflict herewith be repealed. The Supreme Court having held that the present article does not allow recovery for injuries resulting in death caused by the wrongful act, neglect, unskillfulness or default of a corporation, its agents or servants, creates an emergency and an imperative public necessity, demanding the suspension of the rule requiring bills to be read on three several days in each House, and said rule is hereby suspended, and that this act take effect from and after its passage, and it is so enacted."

Article 4695 is as follows:

"Art. 4695 (3018). Character of Wrongful Act.—The wrongful act, negligence, carelessness, unskillfulness or default, mentioned in the preceding article, must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury. (Acts 1860, p. 32—Acts 1887, p. 44, Acts 1892, S. S., p. 5.)"

It will be observed that section 2 was amended by adding, after the word "person," "or corporation, their agents or servants." It is urged here that this amendment abrogates the rule of fellow servant and renders the employer liable for the negligent act of a fellow servant, causing the death of the decedent. It was the evident purpose of the amendment to place the class of persons to which section 2 is applicable, upon the same footing as to a right of recovery with the class named in section 1 of the article. By section 1 a right of action is given—

"when the death of any person is caused by the neglect or carelessness of the proprietor, * * * or by the unfitness, neglect or carelessness of their servants or agents."

Previous to the fellow servants law, as applicable to the employés of railroads, article 6642, R. C. S., our Supreme Court held that the beneficiaries could not recover under this act for the death of their decedent, caused by the negligent act of a fellow servant. Railway Co. v. Berry, 67 Tex. 238, 5 S. W. 817; Price v. H. D. Nav. Co., 46 Tex. 535. The language of article 4695 is that the act of negligence or default is such "as would, if death had not ensued, have entitled the party injured to maintain an action for such injury," and has been held to limit the right of action to those cases in which the decedent could have recovered had he sued for the injury in his lifetime. If he settled before death for the damages occasioned by the injury, his widow could not sue for damages after his death, resulting from such injury. Thompson v. Railway Co., 97 Tex. 590, 80 S. W. 990, 1 Ann. Cas. 231.

"By the law regulating the relation of master and servant, unless modified by statute, the master is not responsible to the servant for an injury inflicted by a fellow servant; but the master is responsible for his own negligence resulting in injury to the servant." Railway Co. v. Freeman, 97 Tex. 394, 79 S. W. 9, 1 Ann. Cas. 481.

The above expression was used in discussing the question of the liability of a railroad sought to be established for the death of a third party, and whether in that case the railroad fell under the class named in subdivision 1 of the article. When the master himself is not guilty' of negligence and

would not be liable to the deceased for injuries had he lived, under article 4695, he is not liable to the beneficiaries for the death of their decedent, under the statute. If for any other reason the master would not be liable to the decedent while living, under the above articles, the master would not be liable to the beneficiaries. Sullivan v. Watson (Sup.) 155 S. W. 179; Wilson v. Brown, 154 S. W. 322. We cite the above cases as illustrating the application the courts of this state have made to article 4695. Since the enactment of the death statute in 1860, it has contained the provision that a proprietor is liable for the death of another occasioned by his negligence or the unfitness, negligence, or carelessness of his servants or agents, and in all cases the courts hold that a recovery cannot be had for the death unless living, the decedent could have done so. It will not be contended in this case if Sewell had been injured only and not killed, and if the injury received by him was caused solely by the negligence of a fellow servant, that under the law he could have recovered. The trial court, by his charge in this case, recognized the general limitation on recovery contained in article 4695. He charged the jury that the appellee could not recover if the deceased assumed the risk, or if he was guilty of contributory negligence. However, we do not understand that counsel for appellee contends that the fellow servant's rule does not apply if article 4695 is unrepealed. The act in question does not purport to repeal or to amend the last article. It only purports to amend article 4694. In other words, it broadens the right of action. Under the law of master and servant, the master is liable for injury inflicted upon a third person. Before the amendment the master would not be liable for the death of such third person under the statute, occasioned by the negligence of the servant. Apparently the purpose of the amendment was to grant the right of action in such case. If this is not the holding of the Supreme Court referred to in the emergency clause of the act, we do not know to what holding reference is made thereby. If the contention of appellee is correct, with reference to the repeal of the article, if a railroad should be sued for the death of an employé, it could not plead contributory negligence on his part in diminution of the damages, or that he knew of the danger and, after knowing of same, continued at the work when an ordinarily prudent person would not have done so under the circumstances, or if he had, previous to his death, settled with the company for the injuries received thereby. That this is not the effect on the liability of the master for the negligence of the servant the history and adjudication on section 1 of the article demonstrates. That part of the article stands now as it has always stood. Certainly the amendment of section 2 did not affect section 1, which is unaltered. It is as-

serted that the clause in the act in question "that all laws in conflict herewith be repealed" repeals article 4695. The clause in section 1 with reference to the negligence of servants and agents of proprietors therein mentioned has never been held to repeal the article that follows it, or to be repugnant to it, or that both could not stand and effect be given to each. As stated, these sections have repeatedly been before the courts. We cannot now perceive any conflict or repugnance in section 2 and article 4695, or any reason why both may not stand. It is the duty of the courts to construe the two so that effect will be given to each. There is no express repeal—the act does not purport to do so.

[3] An implied repeal is not favored by the rules of construction, and the conflict must be one which is clear, or so repugnant that both cannot remain the law.

"The specification of certain sections of an act as repealed is deemed equivalent to a declaration that the remaining sections shall remain in force; that a clear repugnancy will be necessary to further extend the repeal." Sutherland on Statutory Construction, § 147, p. 199; Crosby v. Patch, 18 Cal. 438; State v. Morrow, 26 Mo. 131.

So we think the clear implication from the amendment of section 2 is that the remaining article or portions of the law shall remain in force.

"So far as the section is changed, it may receive a new operation, but so far as it is not changed, it would be dangerous to hold that the mere nominal re-enactment should have the effect of disturbing the whole body of statutes in pari materia, which has been passed since the first enactment. There must be something in the nature of the new legislation to show such an intent with reasonable clearness before an implied repeal can be recognized." Sutherland on Statutory Construction, § 133.

The fact that the right of action was broadened by the amendment will not incorporate a meaning to article 4695 different from that theretofore established and given by the courts. We do not think we are to look to section 2 of article 4694 for the meaning of article 4695, but should give it the same meaning that it had when used with reference to servants and agents under section 1 before adding servants and agents to section 2. Foster v. Champlin, 29 Tex. 22. We think the case of Stoneage v. Southern, etc., 123 Tenn. 428, 131 S. W. 988, 31 L. R. A. (N. S.) 278, is authority for the rule that a later statute or amendment forming a part of a system or right is to be considered with reference to the pre-existing body of that law, to which it is added and of which it forms a part; and where there is no express purpose to amend or repeal the other articles not named one should not be inferred unless they conflict with or are repugnant to the later statute. Commonwealth v. Baxter, 235 Pa. 179, 84 Atl. 140, 42 L. R. A. (N. S.) 484, and authorities there cited.

Our Supreme Court, in the recent case of Cole v. State, 170 S. W. 1036, in which the

opinion was handed down November 18, 1914, has so clearly expressed the rule as to render the citation of other authorities unnecessary.

"Knowledge of the existing law relating to the same subject is likewise attributed to the Legislature in the enactment of a subsequent statute; and, when the later act is silent as to the older law, the presumption is that its continued operation was intended, unless they present a contradiction so positive that the purpose to repeal is manifest, * * · * but the antagonism must be absolute—so pronounced that both cannot stand. Though they may seem to be repugnant, if it is possible to fairly reconcile them, such is the duty of the court. A construction will be sought which harmonizes them and leaves both in concurrent operation, rather than destroys one of them."

We do not think article 4695 repealed by section 2 as amended, and heretofore set out. The two sections are not in conflict or repugnant, and they can, we think, be reconciled one with the other.

We think the charge of the court was error, which will require a reversal of the case. If Inman negligently threw the starting lever and such negligence caused Sewell's death, the appellant, Canode, would not be liable. Inman was the fellow servant of Sewell, and his negligence alone would not authorize a recovery, but would defeat a recovery. If Inman was negligent, and the appellant was also negligent in the particulars alleged, and his negligence concurred with that of Inman, which caused Sewell's death, then appellant would be liable.

It is unnecessary to discuss the remaining assignments, as they will not likely arise upon another trial. The case will be reversed and remanded.